UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSELITO E. CORTEZ,<br><br>Plaintiff,<br><br>v.<br><br>U.S. INTERNAL REVENUE SERVICE,<br><br>Defendant. | No. 2:21-cv-01598-DAD-DB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 12, 13) |

This matter is before the court on the parties' cross-motions for summary judgment. (Doc. Nos. 12, 13.) On March 14, 2023, the pending motions were taken under submission on the papers. (Doc. No. 22.) For the reasons set forth below, the court will grant defendant Internal Revenue Service's ("IRS") motion for summary judgment and deny plaintiff Joselito Cortez's motion for summary judgment.

**BACKGROUND**

**A.  Factual Background**

The facts summarized herein are derived from the parties' joint statement of stipulated facts (Doc. No. 11); the unsigned copy of the Form 1040, including the W-2 forms filed as part of this Form 1040, which is attached to the parties' joint statement as Exhibit A (Doc. No. 11-1, hereinafter "Exhibit A"); and the IRS account transcript submitted by plaintiff with his complaint

/////

1

(Doc. No. 1-1).[1]

Plaintiff had an obligation to file his 2004 federal income tax return by April 15, 2005, or timely file for an extension, but failed to do either. (Doc. No. 11 at ¶ 1.) On or about December 7, 2009, the IRS assessed tax in the amount of $6,006 against plaintiff individually for the 2004 tax year pursuant to a substitute return the IRS prepared under 26 U.S.C. § 6020(b). (*Id.* at ¶ 2; Doc. No. 1-1 at 3.)

On or about April 25, 2011, plaintiff filed a 2004 Form 1040 with his now-deceased spouse, Lorna Cortez ("Ms. Cortez"), reflecting the status of married filing jointly. (Doc. No. 11 at ¶ 3.) The Form 1040 reported W-2 wage income for plaintiff from the United States Postal Service in the amount of $45,004.34 and wage income for Ms. Cortez from Phoenix Programs, Inc. in the amount of $42,748.92, for a total of "$87,752" in income. (Exhibit A.) It also claimed three exemptions for three Cortez children, as well as a child tax credit for one of the children. (*Id.*) In addition, the Form 1040 claimed the standard deduction and reflected a total tax of $8,119, with total payments made of $1,406, and a remaining tax amount due of $6,713. (*Id.*) Although the copy of the Form 1040 before the court in connection with the pending motions is unsigned (*see* Exhibit A), plaintiff and Ms. Cortez in fact signed the Form 1040 before submitting it to the IRS (Doc. No. 11 at ¶ 3). In response to that submission, the IRS assessed tax jointly against plaintiff and Ms. Cortez in the additional amount of $2,113 on October 31, 2011. (Doc. No. 11 at ¶ 4.) This was the amount of additional tax reported by plaintiff and Ms. Cortez on the Form 1040 that was above and beyond the $6,006 tax due amount that the IRS had previously assessed against plaintiff in 2009. (*Id.*; Exhibit A; Doc. No. 1-1.)

In 2012, plaintiff submitted an offer-in-compromise concerning the tax he owed for the 2004 tax year, which the IRS rejected. (Doc. No. 1-1 at 3.) After the IRS collected some involuntary payments by levy, plaintiff entered into an installment agreement with the IRS, pursuant to which he made several voluntary payments toward the remaining tax amount due, beginning in early 2017 and continuing to early 2018. (*Id.* at 3–4.)

---

[1] In their joint statement of stipulated facts, the parties stipulate to the authenticity of the IRS account transcript submitted by plaintiff with his complaint. (Doc. No. 11 at ¶ 10.)

1   The parties further stipulate that plaintiff lacks any "reasonable cause" or similar argument for why he failed to file his 2004 tax return on time and before the IRS made its December 7, 2009 assessment. (Doc. No. 11 at ¶ 5.) Plaintiff does not dispute the mathematics of the IRS's October 31, 2011 assessment of $2,133 in additional tax due, nor the mathematics of the interest and penalties calculated based upon that assessment, but rather merely contests the legality of the assessment, interest, and penalties. (*Id.* at ¶ 6.)

On or about January 21, 2021, plaintiff filed a claim for a refund under 26 U.S.C. § 6511 concerning the payments he made toward the October 31, 2011 assessment within two years of the claim date, *i.e.*, payments made two years prior to January 21, 2021. (*Id.* at ¶ 7.) When the IRS did not respond to plaintiff's timely claim for a refund, he initiated this action. (*Id.* at ¶ 8.) Ms. Cortez passed away on July 12, 2012. (*Id.* at ¶ 9.) All the payments for which plaintiff is seeking a refund were paid after Ms. Cortez's death from plaintiff's sole and separate income and property. (*Id.*)

**B.      Procedural Background**

In his operative complaint, filed September 7, 2021, plaintiff asserts that the submission of the joint Form 1040 to the IRS in April 2011 was "not an honest and reasonable attempt to comply with the Tax Code." (Doc. No. 11 at ¶ 14.) Therefore, he claims, the filing "was not a return [] and per the U.S. Supreme Court a non-return is a 'nullity.'" (*Id.* at ¶ 16) (quoting *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934)). Accordingly, plaintiff seeks a refund for the amounts he paid in the two years prior to the filing of his claim, asserting that an "assessment based upon a nullity is invalid and is null and void, making the assessment for the 2004 tax year based upon the April 2011 filing invalid, null and void." (*Id.* at ¶ 17.)

On January 31, 2023, the parties filed cross-motions for summary judgment, along with a joint stipulation of facts in support of the cross-motions. (Doc. Nos. 11, 12, 13.) On February 14, 2023, defendant filed its opposition brief, and on March 2, 2023, plaintiff filed his opposition brief. (Doc. Nos. 16, 19.) On March 2, 2023, plaintiff filed his reply in support of his motion for summary judgment, and on March 13, 2023, defendant filed its reply in support of its motion for summary judgment. (Doc. Nos. 20, 21.)

3

|   |   |
|---|---|
| 1 | **LEGAL STANDARD** |
| 2 | Summary judgment is appropriate when the moving party "shows that there is no genuine |
| 3 | dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. |
| 4 | Civ. P. 56(a). Here, the material facts are undisputed. (*See* Doc. No. 11.) Thus, the |
| 5 | determination of whether plaintiff's belated submission of Form 1040 to the IRS qualifies as a |
| 6 | "return" for purposes of the IRS's authority to make a summary assessment presents a question of |
| 7 | law which is appropriately decided by the court on summary judgment. |
| 8 | **ANALYSIS** |
| 9 | The Internal Revenue Code does not statutorily define what qualifies as a "return." *See In* |
| 10 | *re Hatton*, 220 F.3d 1057, 1060 (9th Cir. 2000) (stating that "the I.R.C. does not provide a |
| 11 | statutory definition of "return"); *Seaview Trading, LLC v. Comm'r of Internal Revenue*, 34 F.4th |
| 12 | 666, 676 (9th Cir. 2022) (stating that "the Tax Code doesn't define 'return'"), *reh'g en banc* |
| 13 | *granted, opinion vacated on other grounds*, 54 F.4th 608 (9th Cir. 2022), *and on reh'g en banc*, |
| 14 | 62 F.4th 1131 (9th Cir. 2023). Additionally, prior to 2005, the Bankruptcy Code did not define |
| 15 | "return." *In re Smith*, 828 F.3d 1094, 1096 (9th Cir. 2016). Therefore, the Ninth Circuit, in |
| 16 | considering the issue in the bankruptcy context, determined whether a document was a "return" |
| 17 | applying a four-factor test, known as the "*Beard* test." *See e.g.*, *In re Hatton*, 220 F.3d 1057, |
| 18 | 1060 (9th Cir. 2000) (citing *Beard v. Commissioner*, 82 T.C. 766 (1984), *aff'd*, 793 F.2d 139 (6th |
| 19 | Cir. 1986)). To qualify as a "return" under this test, a document must: "(1) . . . purport to be a |
| 20 | return; (2) . . . be executed under penalty of perjury; (3) . . . contain sufficient data to allow |
| 21 | calculation of tax; and (4) . . . represent an honest and reasonable attempt to satisfy the |
| 22 | requirements of the tax law." *Id.* at 1060–61 (citations omitted). |
| 23 | In the years preceding the 2005 amendments to the Bankruptcy Code under the |
| 24 | Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), 11 U.S.C. § |
| 25 | 523(a)(1)(B) prohibited the discharge of tax debts for which the debtor failed to file a "return." *In* |
| 26 | *re Sienega*, 619 B.R. 405, 409 (B.A.P. 9th Cir. 2020), *aff'd*, 18 F.4th 1164 (9th Cir. 2021). With |
| 27 | regard to the pre-BAPCPA version of 11 U.S.C. § 523(a)(1)(B), the Ninth Circuit noted that |
| 28 | "[t]he policy behind this subsection is that a debtor should not be permitted to discharge a tax |

liability based upon a required tax return that was never filed." *In re Jackson*, 184 F.3d 1046, 1052 (9th Cir. 1999). In 2005, through BAPCPA, Congress amended § 523(a) to include a definition for a "return" under bankruptcy laws. *See* 11 U.S.C. § 523(a). Commonly cited as § 523(a)(*), the added "hanging" paragraph provides:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

*Id.* § 523(a)(*). After BAPCPA, for purposes of determining the dischargeability of a federal income tax debt, courts continue to apply the *Beard* test in determining whether the debtor has filed a "return" under federal law. *See, e.g., In re Martin*, 542 B.R. 479, 489 (B.A.P. 9th Cir. 2015) ("[F]or purposes of determining the dischargeability of federal income tax debt, the "return" definition added by Congress in 2005 effectively codified the *Beard* test . . . .").

The second sentence of § 523(a)(*) of the Bankruptcy Code includes within the definition of "return" those returns prepared by the IRS under 26 U.S.C. § 6020(a), but excludes those prepared under 26 U.S.C. § 6020(b). *See* 11 U.S.C. § 523(a)(*). The relevant provisions of 26 U.S.C. § 6020 state:

> (a) Preparation of return by Secretary. If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.
>
> (b)(1) Authority of Secretary to execute return. If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

26 U.S.C. § 6020.

In this case, in 2009, the IRS assessed tax in the amount of $6,006 against plaintiff individually for the 2004 tax year pursuant to a substitute return the IRS prepared on plaintiff's

1 behalf under 26 U.S.C. § 6020(b).  As defendant explains in its motion for summary judgment,
2 the additional assessment of tax against plaintiff and Ms. Cortez in October 2011 was made
3 through a summary assessment pursuant to 26 U.S.C. § 6201(a)(1) because plaintiff and Ms.
4 Cortez, in their Form 1040 filed with the IRS in April 2011 for the 2004 tax year, reported $2,113
5 more in tax due than the IRS had initially calculated in its 2009 substitute return.  (Doc. No. 12 at
6 9.)

7 In his motion for summary judgment, plaintiff contends that because the filing of Form
8 1040 was belated, it does not constitute a "return."  (Doc. No. 13 at 32.)  He argues that "since the
9 United States Supreme Court holds that a return that purports to be a return but is not a return is a
10 'nullity' and as a nullity is invalid for all tax purposes, including for purposes of assessment, the
11 IRS's assessment against [plaintiff] is equally null and void and thus any monies collected based
12 on this assessment must be returned to [plaintiff]."  (*Id.* at 10.)  In its own motion for summary
13 judgment, defendant contends that the assessment at issue was proper because plaintiff's filing of
14 the Form 1040 constituted a "return" under 26 U.S.C. § 6201(a)(1) and, therefore, plaintiff is not
15 entitled to a refund of his payments made toward the October 2011 assessment.  (Doc. No. 12 at
16 18–21.)  In short, the underlying legal question at issue in the pending cross-motions is whether
17 plaintiff's submission of the Form 1040 constitutes a "return" under the Tax Code even though he
18 contends that it did not represent "an honest and reasonable attempt to satisfy the requirements of
19 the tax law" due to its belated filing.  *In re Hatton*, 220 F.3d at 1060–61.

20 In arguing that his Form 1040 is not a "return," plaintiff relies on the Ninth Circuit's
21 decision in *In re Smith*, 828 F.3d 1094 (9th Cir. 2016).  (Doc. No. 13 at 32.)  In that case, the
22 plaintiff's Form 1040—which was filed seven years after his tax return was due and three years
23 after the IRS calculated a deficiency and issued a tax assessment—was deemed not a "return" for
24 bankruptcy dischargeability purposes.  *In re Smith*, 828 F.3d at 1096.  Plaintiff points out that, in
25 determining whether the plaintiff's late-filed form was a "return" such that it would be
26 dischargeable, the Ninth Circuit in *In re Smith* used "applicable nonbankruptcy law (including
27 applicable filing requirements)," as required by 11 U.S.C. § 523(a)(*).  (*See* Doc. No. 13 at 32)
28 (citing *In re Smith*, 828 F.3d at 1096).  Plaintiff contends that, pursuant to the decision in *In re*

6

*Smith*, his Form 1040—filed six years after it was due—should not be considered a "return" for any purpose under nonbankruptcy law, including for purposes of determining the IRS's authority to make summary assessments under 26 U.S.C. § 6201(a) upon the filing of the Form 1040. (Doc. No. 13 at 10, 31–34.)

In its own motion for summary judgment, defendant emphasizes that the Ninth Circuit in *In re Smith* addressed only the narrow question of whether the plaintiff's Form 1040 in that case qualified as a "return" for purposes of determining dischargeability under the Bankruptcy Code, 11 U.S.C. § 523(a), and that the Ninth Circuit did not find that the Form 1040 at issue was not a "return" for all tax purposes. (Doc. No. 12 at 12.) Defendant highlights that following the Ninth Circuit's decision in *In re Smith*, the same counsel who is representing plaintiff in this action brought suit against the government in *Smith v. United States Department of Treasury*, No. 17-cv-05394-EMC, 2018 WL 1184821 (N.D. Cal. Mar. 7, 2018) (*Smith II*). (Doc. No. 12 at 6.) Notably, in *Smith II*, the district court held—as defendant argues here—that the Ninth Circuit's analysis of the meaning of "return" in *In re Smith* was limited to the narrow question of dischargeability under the Bankruptcy Code, observing that the Ninth Circuit "did not find that Smith's Form 1040 was not a return for all tax purposes . . . ." 2018 WL 1184821, at *4. It thus appears that plaintiff's counsel has previously, albeit unsuccessfully, attempted to import *In re Smith*'s definition of "return" from the bankruptcy dischargeability context more broadly to the entire Tax Code.

Defendant cites the Seventh Circuit's decision in *In re Payne*, 431 F.3d 1055 (7th Cir. 2005) to support its argument that the Ninth Circuit's reasoning in *In re Smith* does not compel the conclusion that the IRS must treat plaintiff's late-filed Form 1040 as a non-return in this context. (Doc. No. 12 at 13) (citing *In re Payne*, 431 F.3d at 1058–59). In that case, the Seventh Circuit held that a "return" can "mean two different things in different parts of the federal tax law." *In re Payne*, 431 F.3d at 1058–59. This court finds the Seventh Circuit's decision in *In re Payne* to be instructive and in line with the approach taken by the Ninth Circuit. *See Conforte v. Commissioner*, 692 F.2d 587 (9th Cir. 1982). The Seventh Circuit in *In re Payne* explained that in a bankruptcy case, "a return that does not meet the 'honest and reasonable endeavor' standard

7

is denied the status of a return in order to discourage people from using bankruptcy law to avoid having to satisfy their tax liabilities." *Id.* at 1059. However, in a fraudulent return case, "a dishonest return is classified as a return in order to discourage fraud . . . ." *Id.*; *see also Badaracco v. Comm'r*, 464 U.S. 386, 397 (1984) ("[T]he original returns . . . purported to be returns, were sworn to as such, and appeared on their faces to constitute endeavors to satisfy the law. Although those returns, in fact, were not honest, the holding in *Zellerbach* does not render them nullities."). As the Seventh Circuit explained, the only way that cases that have dealt with this issue "make sense and are consistent [is] if 'return' can vary with context; nonsense results if 'return' must bear the same meaning everywhere." *In re Payne*, 431 F.3d at 1059.

Plaintiff dramatically urges this court to seize the "opportunity to issue a generational opinion similar to *Erie* that will guide federal courts forevermore" by creating a new "*Cortez* doctrine," the essence of which is that if a term is defined in one context or title of the federal code and undefined in another, federal courts must adopt the definition from a code section where the term is defined. (Doc. No. 13 at 44–45.) However, the Ninth Circuit has previously considered and specifically rejected the notion that the term "return" must have the same meaning in all parts of the Tax Code, instead acknowledging "the possibility that the same word could have a different meaning in different parts of the code," and concluding that "where . . . a word could well have a different meaning in different statutory contexts, a purpose-oriented approach should be used when interpreting the meaning of the word as it is used in different sections of the Code." *Conforte*, 692 F.2d at 591.

Pursuant to the Ninth Circuit's decision in *Conforte*, this court must examine the purpose behind the relevant code section. *See id.* Unlike *In re Smith*, where the plaintiff was in bankruptcy seeking debt dischargeability, here, plaintiff is claiming a tax refund based on his argument, raised many years after the fact, that his submission of the Form 1040 was not an honest and reasonable attempt to comply with tax law. *See* 828 F.3d at 1097. It follows that the goal of "discourag[ing] people from using bankruptcy law to avoid having to satisfy their tax liabilities" by limiting the definition of "return" to exclude untimely filings simply does not apply in the context of this case. *In re Payne*, 431 F.3d at 1059.

Furthermore, the court agrees with defendant that various provisions in the Tax Code support the conclusion that a late-filed Form 1040 can be considered a "return," thus allowing the IRS to make a summary assessment under 26 U.S.C. § 6201(a).  (*See* Doc. No. 12 at 14.)  Section 6201 empowers and mandates the Secretary to "make the inquiries, determinations, and assessments of all taxes" imposed by the Code, or accruing under any previous internal revenue law, "which have not been duly paid by stamp at the time and in the manner provided by law." 26 U.S.C. § 6201(a).  The Secretary must "assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists" are made under the Tax Code.  *Id.* § 6201(a)(1).  Except as otherwise provided, the amount of any tax imposed by the Internal Revenue Code "shall be assessed within 3 years after the return was filed *(whether or not such return was filed on or after the date prescribed)*."  *Id.* § 6501(a) (emphasis added).  Thus, the Tax Code clearly contemplates that a return can be filed after the prescribed date and still qualify as a "return."  *See id.* Additionally, the Tax Code section addressing penalties for failing to file a tax return certainly implies that a late-filed return is still a "return" capable of halting the accrual of penalties for failure to file.  *See id.* § 6651.  Defendant also persuasively argues in its motion for summary judgment that invalidating a summary assessment under § 6201(a)(1) based on a later claim that the filing on which the assessment was based did not represent "an honest and reasonable attempt to satisfy the requirements of the tax law," *In re Hatton*, 220 F.3d at 1061, would effectively write § 6201 out of the Tax Code, a result that Congress could not have intended.  (Doc. No. 12 at 18.)

Finding the government's arguments to be completely persuasive, the court rejects plaintiff's attempt to import here the definition of "return" from the bankruptcy dischargeability context.  Though the court will still apply the *Beard* factors in assessing whether the Form 1040 submitted by plaintiff was a "return," the court will disregard plaintiff's argument that the belated submission was not "an honest and reasonable attempt to satisfy the requirements of the tax law," *In re Hatton*, 220 F.3d at 1061.  *See Seaview Trading*, 34 F.4th at 676 ("[W]e use an objective inquiry—not the subjective intent of the filer—to assess whether a document is a return."); *Coffey v. Comm'r of Internal Revenue*, 987 F.3d 808, 814 (8th Cir. 2021) ("The taxpayer's 'subjective intent is irrelevant' in determining what is an honest and genuine return.") (citations omitted).

From reviewing plaintiff's Form 1040 filing (*see* Doc. No. 11-1) and the parties' joint statement of stipulated facts (Doc. No. 11), the court concludes that consideration of each of the *Beard* factors support the conclusion that the Form 1040 submitted by plaintiff was a "return" for purposes of allowing a summary assessment by the IRS under 26 U.S.C. § 6201(a). First, the filing was on the proper form, a Form 1040 (2004), and was properly filled out. Second, plaintiff and his then-spouse signed the form and declared, under penalty of perjury, that they had examined "this return" and that it was "true, correct, and complete," to the best of their knowledge. Third, the filing was a relatively straightforward return that simply reported the W-2 wage income plaintiff and his then-spouse received, claimed three exemptions for three Cortez children, a child tax credit for one of the children, the standard deduction, and then mechanically calculated the amount of tax due. There was no indication on the face of the return itself that it was anything other than a straightforward reporting of the income earned by and tax due from plaintiff and his then-spouse for the tax year 2004. Fourth and finally, plaintiff's subsequent actions, including submitting an offer-in-compromise related to this tax debt and entering into an installment agreement to make payments on this debt, strongly suggest that the Form 1040 was, on its face, a "return."

Accordingly, the court will grant defendant's motion for summary judgment in its favor and deny plaintiff's motion for summary judgment in his favor.

**CONCLUSION**

For these reasons,

1. Defendant's motion for summary judgment (Doc. No. 12) is granted;
2. Plaintiff's motion for summary judgment (Doc. No. 13) is denied; and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 11, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

10